# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSUE ORTEGA,                      :

        Plaintiff,          :          CIVIL ACTION

                            :

        v.                         :

EDWARD ROULHAC,                    :          NO.  13-4717

THE SCHOOL DISTRICT OF             :

PHILADELPHIA,                      :

WILLIAM R. HITE, ED.D., and        :

REGINALD D. FISHER,                :

        Defendants.         :

**FILED**

JAN 22 2015

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

## MEMORANDUM

BUCKWALTER, S. J.                                             January 22, 2015

    Currently pending before the Court are the Motions by Defendant Edward Roulhac and

Defendants The School District of Philadelphia, William Hite, and Reginald Fisher (collectively

"Defendants") to Dismiss Plaintiff Josue Ortega ("Plaintiff")'s Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Motions to Dismiss are

granted.

## I.    FACTUAL BACKGROUND

    Plaintiff is an eighteen-year-old resident of Philadelphia, Pennsylvania.  (Am. Compl. ¶

1.)  Plaintiff was a student at Frankford High School, part of the Philadelphia School District,

from September 2012 through the date of the filing of the First Amended Complaint.  (Id. ¶ 30.)

    At the time of the events detailed in the Amended Complaint, Defendant Edward Roulhac

("Roulhac") was previously employed by the School District of Philadelphia and Frankford High

School ("Frankford") as an assistant principal.  (Id. ¶¶ 2, 29.)  Defendant Roulhac was also the

1



Safety, Climate, Culture, & Safety [sic] Administrator at Frankford. (Id. ¶ 3.) In that capacity, his duties included "keeping safe and secure the students rendered to his care, custody, control, and monitoring[;] regulating [] and coordinating school-related operations, all district and state test assessments, school-wide school transitions and hall movement, overall school safety and climate, and student activities (sport and non-sport)." (Id. ¶ 38.)

Defendant Philadelphia School District is a local education authority and political subdivision duly organized, established, and existing under the laws of the Commonwealth of Pennsylvania. (Id. ¶ 4.) The Philadelphia School District is a local education authority within the meaning of the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 et seq., and is responsible and obligated under the IDEA, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq., to provide and implement a Free Appropriate Public Education ("FAPE") for Plaintiff. (Id.)

Defendant William R. Hite, Jr., Ed.D. ("Hite") is a competent adult individual who, at all relevant times, was employed as the Superintendent of the Philadelphia School District. (Id. ¶ 6.) In that position, Defendant Hite was a policymaker for the Philadelphia School District and was authorized by the District to perform duties and responsibilities including, but not limited to, supervising and monitoring Defendant Roulhac, supervising Frankford, and supervising the care and custody of the children being taught at Frankford. (Id.) Defendant Hite was also responsible for ensuring that Plaintiff received a FAPE in the least restrictive environment. (Id. ¶ 7.)

Defendant Reginald D. Fisher ("Fisher") was, during the 2012-2013 school year, employed by the Philadelphia School District as the Principal of Frankford High School. (Id. ¶ 8.) At all relevant times, Defendant Fisher was authorized by the Philadelphia School District to perform the duties and functions of Frankford's Principal, including, but not limited to,

2

supervising and monitoring Defendant Roulhac, supervising Frankford, and supervising the care and custody of the children being taught at Frankford. (Id.)

On or about August 27, 2002, Defendant Philadelphia School District offered and Defendant Roulhac accepted the position of Acting Assistant Principal at the Ada H. Lewis Middle School, effective September 3, 2002. (Id. ¶ 11.) Six years later, on or about July 24, 2008, Defendant Roulhac was reassigned to Frederick Douglass Elementary School as Principal, effective July 1, 2008. (Id. ¶ 12.) On or about October 29, 2009, Regional Superintendent Central Region Marilyn Perez issued a SHE-204 Unsatisfactory Incident recommending that Defendant be demoted from his position as Principal effective immediately. (Id. ¶ 13.) That decision was based on an unsatisfactory school climate and lack of implementation of the curricular programs and initiatives at Frederick Douglass Elementary School. (Id. ¶ 14.) Ms. Perez noted that there had been numerous incidents regarding violence and violent behavior, including fighting both before and after school in the schoolyard, school bathrooms, and stairwells, and also cited specific incidents witnessed on October 6, 23, and 29, 2009. (Id. ¶¶ 15–16.) On October 29, 2009, Ms. Perez described a series of incidents that spanned several hours, including a kindergarten student who left the school without being detected, children walking in the hallways without passes, students fighting, adults arguing, one adult being arrested, and other similar incidents. (Id. ¶ 17.) Ms. Perez also reported that serious incidents had not been reported, including events that occurred on October 15 and 27, 2009. (Id. ¶ 18.) In the October 29, 2009 SHE-204, Ms. Perez criticized Defendant Roulhac for not being informed and not being cognizant of obvious conditions at his school, as well as the school's unsatisfactory climate, and recommended that Defendant Roulhac be immediately demoted to Assistant Principal. (Id. ¶¶ 19–20.) On or about December 2, 2009, Defendant Roulhac retired from the Philadelphia

School District, but on or about April 5, 2010, he rescinded his decision to retire. (Id. ¶¶ 21–22.) On or about July 1, 2010, Arlene C. Ackerman, then-Superintendent of the Philadelphia School District, recommended to the School Reform Commission that Defendant Roulhac be demoted to the position of Assistant Principal. (Id. ¶ 23.) On or about August 11, 2010, the Philadelphia School District reassigned Defendant Roulhac to PLA North High School as an Extra Service Assistant Principal. (Id. ¶ 24.) On or about July 8, 2011, Defendant Roulhac was reassigned to Academic Division 6 as Assistant Principal on Special Assignment. (Id. ¶ 25.) Other than the demotion to Assistant Principal, Defendant Roulhac was not subject to any other disciplinary action. (Id. ¶ 27.)

On or about June 22, 2012, Defendant Philadelphia School District offered Defendant Roulhac the position of Assistant Principal at Frankford High School, which had been identified by the Pennsylvania Board of Education as a "Persistently Dangerous School" for the years 2006 to 2013. (Id. ¶ 26.) Frankford and the Philadelphia School District were responsible for ensuring that each assistant principal, including Defendant Roulhac, was adequately trained. (Id. ¶ 35.) Defendant Roulhac was professionally certified in the Commonwealth of Pennsylvania in the area of elementary education, but not as a Principal or Assistant Principal. (Id. ¶¶ 36–37.)

On November 2, 2012, at approximately 10:05 a.m., Plaintiff, Plaintiff's niece, and a third student named Rene, were walking in the hallway after being dismissed from class when Defendant Roulhac approached the three students and initiated an argument with them. (Id. ¶ 39.) Defendant Roulhac attempted to grab Rene, but school officers intervened and escorted Rene to a supervised classroom. (Id. ¶ 40.) Plaintiff continued to another classroom to retrieve his transportation pass from another student, but before he got there he was again confronted by Defendant Roulhac who, "in a hostile manner," ordered Plaintiff to remove his hat. (Id. ¶ 41.)

4

Plaintiff complied but Defendant Roulhac "unsuccessfully and violently attempted to grab Plaintiff's hat from off his head." (Id.) Plaintiff attempted to leave the classroom with Rene, but Defendant Roulhac blocked the doorway so that Plaintiff and Rene were prevented from leaving. (Id. ¶ 42.) Defendant Roulhac asked them where they were going, and Plaintiff responded that they were going to class. (Id.) Defendant Roulhac replied, "[n]o you're not," then pushed Rene with his hands, who said "[y]o, why you put your hands on me, you're not my father," to which Defendant Roulhac responded "[w]hat do you want to do, son? Don't worry; we have to go behind closed doors eventually," to which Rene replied "[t]hat's what I have a dad for." (Id.) Defendant Roulhac then approached Plaintiff and said "[g]ive me your f***ing phone," and forcefully removed Plaintiff's phone from his bag. (Id. ¶ 43.) Plaintiff asked Defendant Roulhac to return the phone, but was refused. (Id.) Defendant Roulhac then punched Plaintiff in his face, grabbed him, and slammed him into file cabinets. (Id. ¶ 46.) Defendant Roulhac is approximately six feet three inches tall and weighs approximately 220 pounds. (Id. ¶ 44.) Plaintiff is five feet eleven inches tall and at the time of the incident weighed approximately 130 pounds. (Id. ¶ 45.) School officers intervened and removed Plaintiff from the classroom. (Id. ¶ 47.) Plaintiff overheard a school officer tell Defendant Roulhac that he had gone "overboard." (Id. ¶ 48.)

At approximately 10:15 a.m., school officers escorted Plaintiff to the school police office at Frankford, where they cleaned blood from his face and asked him to write a statement describing the incident. (Id. ¶ 49.) Defendant Roulhac entered the office and said to Plaintiff, "[w]hat do you want to do now, you little punk?" (Id. ¶ 50.) A school officer admonished Defendant Roulhac that he was not permitted to speak to Plaintiff, nor was he permitted in the school police office, because Plaintiff was in the custody of the school police. (Id.) Defendant

5

Roulhac said "I'm not going anywhere," but after the school officer again told him that he needed to leave so that Plaintiff could write his statement, he finally left the office. (Id.)

Without notifying Defendant Fisher or Frankford's school police sergeant, Defendant Roulhac contacted Frankford Police Headquarters and falsely alleged that he had been assaulted by two students and that he wanted them arrested. (Id. ¶ 51.) Police officers from the 15th Police District arrived at Frankford and arrested Plaintiff and Rene for disorderly conduct. (Id. ¶ 53.) Plaintiff was detained at the Police District for approximately two and a half hours, and was released with a citation to appear in court for disorderly conduct. (Id. ¶ 54.)

As a result of the incident, Plaintiff suffered bruising, a traumatic brain injury, neck sprain and spasm, facial twitching, vision disturbance, traumatic iritis to the right eye, a contusion to the orbital tissue of the right eye, cognitive deficits, and post-traumatic stress disorder, including depression. (Id. ¶ 55.) Due to his injuries, Plaintiff's doctor ordered Plaintiff to stay home from school until November 26, 2012 or November 27, 2012. (Id. ¶ 56, Ex. A.) Plaintiff ultimately did not return to school until December 2, 2012. (Id.) Due to the extensive orthopedic neurological, psychiatric, and ophthalmological nature of his injuries, Plaintiff required special accommodations upon his return to school, but received little to no assistance from Frankford's administration, staff, or teachers. (Id. ¶ 57.) During his time away from school, Frankford did not communicate with Plaintiff or prepare any plan for his missed time, curriculum, or lessons. (Id. ¶ 58.)

Upon his return to school, Plaintiff frequently visited the school nurse for various complaints related to his injuries and requested to call home, but the nurse informed him that "[t]here's nothing I can do for you" and that he could not call home because "it's not a severe or dying matter." (Id. ¶ 59.) Plaintiff experienced difficulty with the sight in his right eye as a

6

result of his injuries, but when he expressed as much to a teacher, he was told to "[u]se your other eye." (Id. ¶ 60.) Plaintiff explained to various teachers his inability to concentrate or understand the relevant material, but they told him "[y]ou're going to have to catch up, because we're on a different level," "[i]t's your problem, and you're not being excused," and "I guess it's a big fat zero." (Id. ¶ 61.)

Due to the school's failure to consider or prepare any plan for Plaintiff's re-entry into school, and the fact that no plan was suggested upon his return, on December 7, 2012, Plaintiff's counsel submitted a proposed 504 plan of accommodation for Plaintiff. (Id. ¶ 62, Ex. B.) On December 19, 2012, Plaintiff's counsel re-submitted the proposed 504 plan of accommodation, endorsed by Plaintiff's doctors. (Id. ¶ 63, Ex. C.) On December 24, 2012, just prior to the winter break and with no education plan in effect to address Plaintiff's impairments, limitations, and/or needs, the Philadelphia School District submitted its own 504 plan of accommodation for Plaintiff, but without including the appropriate specificity or detail. (Id. ¶ 64.) On January 8, 2013, "all parties involved"[1] attended a meeting to discuss a proper 504 plan for Plaintiff. (Id. ¶ 65.) Specific plans for each of Plaintiff's teachers were to be prepared and reviewed, and although work was reviewed, no written plan was ever prepared by each teacher and/or for each course. (Id.) On January 9, 2013, Defendant Philadelphia School District submitted a revised 504 plan. (Id. ¶ 66, Ex. D.) That plan was deficient and failed to include any plans for Plaintiff's courses. (Id.) At Plaintiff's request, on February 6, 2013, Defendant Philadelphia School District issued a Permission to Evaluate. (Id. ¶ 68, Ex. E.) On February 12, 2013, Plaintiff's counsel submitted a revised 504 plan to reflect the academic prescriptions/prohibitions by Plaintiff's neurosurgeon that Plaintiff was not to undergo testing. (Id. ¶ 69, Ex. F.) On

---

[1] Plaintiff does not explain in the Amended Complaint which Defendants, if any, are included in the category "all parties involved."

7

February 28, 2013, Plaintiff's sister signed and returned the Permission to Evaluate. (Id. ¶ 70, Ex. G.) On February 28, 2013, Plaintiff submitted a Pupil Transfer request based on the November 2, 2012 incident and the Philadelphia School District's subsequent failure to implement a satisfactory education plan that would accommodate Plaintiff's cognitive, physical, and emotional needs. (Id. ¶ 71, Ex. H.)

Despite Plaintiff's doctor's prohibition on testing, which was referenced in the Permission to Evaluate, Plaintiff's math teacher administered a test to Plaintiff on March 1, 2013. (Id. ¶ 72.) Plaintiff's math teacher took Plaintiff's test from him, and, out of frustration, tore it up in front of him. (Id. ¶ 73.) That teacher then falsely claimed that Plaintiff assaulted him, causing Plaintiff to be segregated from his classmates and causing Plaintiff to be further debilitated. (Id.)

Defendant Philadelphia School District has not provided Plaintiff with any teachers trained in traumatic brain injuries, nor has it provided Plaintiff with an educational plan or environment appropriate for a student "suffering from a traumatic brain injury and the sequelae resulting therefrom." (Id. ¶ 75.) Plaintiff continues to suffer from neurological deficits and disabilities, including post-traumatic concussion syndrome, as a result of the incident on November 2, 2012. (Id. ¶ 76.)

Plaintiff initiated the present litigation on August 2, 2013 by filing a complaint in the Philadelphia Court of Common Pleas. Defendants removed the case to federal court on August 14, 2014. Thereafter Plaintiff filed a First Amended Complaint on August 18, 2014, setting forth eighteen[2] causes of action, including: 1) vicarious liability against Defendant School District of

---

[2] Plaintiff has voluntarily withdrawn, without prejudice, Counts One, Nine, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen against all Defendants. (See Pl.'s Resp. Opp'n Def. Roulhac's Mot. Dismiss 1; Pl.'s Resp. Opp'n Defs. School District of Philadelphia, Hite, and Fisher's Mot.

8

Philadelphia; 2) breach of fiduciary duty against Defendants School District of Philadelphia, Hite, and Fisher; 3) violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution for injury to human dignity pursuant to 42 U.S.C. § 1983 against Defendants Roulhac, Hite, and Fisher; 4) violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution for injury to bodily integrity pursuant to 42 U.S.C. § 1983 against Defendants Roulhac, Hite, and Fisher; 5) violations of Article I, Section 1 of the Constitution of the Commonwealth of Pennsylvania for injury to bodily integrity against Defendants Roulhac, Hite, and Fisher; 6) violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution for injury to human dignity pursuant to 42 U.S.C. § 1983 against Defendant School District of Philadelphia; 7) violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution for injury to bodily integrity pursuant to 42 U.S.C. § 1983 against Defendant School District of Philadelphia; and 8) violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution for injury as a result of a state-created danger/special relationship pursuant to 42 U.S.C. § 1983 against Defendant School District of Philadelphia. Defendant Roulhac filed a Motion to Dismiss the Amended Complaint on October 6, 2014. Defendants Hite, Fisher, and School District of Philadelphia also filed a Motion to Dismiss the Amended Complaint on October 6, 2014. Plaintiff filed separate Responses to each Motion to Dismiss on October 23, 2014. Defendants Hite, Fisher and School District of Philadelphia submitted a Reply on October 29, 2014, and Defendant Roulhac submitted a Reply on November 3, 2014. Plaintiff

---

Dismiss 1.) Defendant Roulhac has not moved to dismiss Counts Two, Three, and Four, which Plaintiff brought against Defendant Roulhac only. Accordingly, those Counts in the Amended Complaint are not addressed in this Opinion.

9

subsequently filed a Sur-Reply on January 19, 2015.[3]  The Motions to Dismiss are now ripe for judicial consideration.

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

---

[3] While Plaintiff's Sur-Reply is untimely and Plaintiff did not seek leave to file an untimely sur-reply, the Court has considered Plaintiff's arguments, which are based on documents Plaintiff recently obtained pursuant to a third-party subpoena.

A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

Defendants move to dismiss the remaining counts of Plaintiff's Amended Complaint in its entirety due to a lack of foundation under Rule 12(b)(6).[4] Having considered the Amended Complaint and the parties' briefs, the Court finds that Plaintiff has not sufficiently pled Counts

---

[4] In the context of those arguments, Defendants Hite and Fisher argue that they are entitled to qualified immunity on several counts in Plaintiff's Amended Complaint. As all the counts which Defendants have moved to dismiss are being dismissed on the grounds that they are inadequately pled or fail as a matter of law, the Court neither addresses nor makes any conclusion regarding the merits of Defendants' qualified immunity arguments.

11

Five, Six, Seven, Eight, Nine,[5] Ten, Eleven, Twelve, or Thirteen, and will grant Defendants' Motions to Dismiss those claims. As discussed below, Counts Seven, Eight, Eleven, and Twelve are being dismissed without prejudice, while Counts Five, Six, Nine, Ten, and Thirteen are being dismissed with prejudice.

## A. Plaintiff's Waiver Argument

Plaintiff argues that the Defendants have waived their ability to move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted because Rule 12(g) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." (Pl.'s Resp. Opp'n Def. Roulhac's Mot. Dismiss 2–3; Pl.'s Resp. Opp'n Defs. School Dist. of Phila., Hite, and Fisher's Mot. Dismiss 2–3.) This argument misunderstands the meaning of Rule 12(g), which prohibits successive motions that raise defenses which were available but omitted from a prior motion. See Myers v. Am. Dental Ass'n, 695 F.2d 716, 720 (3d Cir. 1982) ("Rule 12(g) requires a party who raises a defense by motion prior to answer to raise all such possible defenses in a single motion. They cannot be raised in a second, pre-answer motion."). Nothing in Rule 12(g) prohibit a party from moving to dismiss an amended complaint where that party had not yet moved to dismiss the original complaint prior to its amendment.

Moreover, "[l]ike so many other rules, [Rule 12(g)] contains an exception: If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by the motion, the party shall not thereafter make a

---

[5] Plaintiff states, in his Response in Opposition to Defendant Roulhac's Motion to Dismiss, that he is voluntarily dismissing Count Nine, but also references Count Nine in connection with his arguments that Counts Seven and Eight should not be dismissed. Accordingly the Court has briefly addressed Count Nine. See infra Section F.1.

12

motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated." Penn-Mont Benefit Servs., Inc. v. Crosswhite, No. Civ.A.02-1980, 2003 WL 203570, at *5 (E.D. Pa. Jan. 29, 2003) (quoting Fed. R. Civ. P. 12(g) (emphasis added)). Rule 12(h) provides that "[a] defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed. R. Civ. P. (12)(h)(2). Accordingly, pursuant to the Federal Rules of Civil Procedure, "the defense of failure to state a claim cannot be waived before the occurrence of a trial on the merits. The advisory committee notes confirm that the defense is preserved against waiver." Penn-Mont Benefit Servs., Inc., 2003 WL 203570, at *5 (citing Fed. R. Civ. P. 12 advisory committee's note to 1966 amendment to subdivision (h) which states that "the more substantial defense[ ] of failure to state a claim upon which relief can be granted . . . [is] expressly preserved against waiver by amended subdivision (h)(2) and (3).").

Plaintiff relies on Chan v. County of Lancaster in support of his argument that Defendants are unable to move to dismiss the Amended Complaint, but ignores that court's note that "[a] court, in its discretion, may excuse the requirements of Rule 12(g) and consider successive Rule 12 motions to dismiss as a means of preventing unnecessary delay . . . . However, defendants do not offer this argument and have not set forth in their brief any reason that this court should exercise its discretion and excuse the requirements of Rule 12(g)." Chan v. Cnty. of Lancaster, No. Civ.A.10-3424, 2012 WL 4510776, at *13 (E.D. Pa. Sept. 28, 2012) (citation omitted). In this case, all Defendants expressly argue that not considering their Motions to Dismiss would result in unnecessary delay because the Court would then have to consider the

13

same arguments pursuant to a motion for judgment on the pleadings under Rule 12(c). (See Def. Roulhac's Reply 4; Defs. School Dist. of Phila., Hite, and Fisher's Reply 5.) As other courts within the Third Circuit have observed, "there is simply no reason to put the defendant to the time and expense of filing an answer, or both defendant and plaintiff to the time and expense of addressing an issue to be raised later in a motion for judgment on the pleadings, when that issue can easily be resolved now." Penn-Mont Benefit Servs., Inc., 2003 WL 203570, at *6 (quoting In re Westinghouse Sec. Litig., No. Civ.A.91–354, 1998 WL 119554, at *6 (W.D. Pa. 1998)).

Accordingly, the Court will consider Defendants' Motions to Dismiss the Amended Complaint pursuant to Rule 12(b)(6).

## B. **Vicarious Liability**

Plaintiff alleges in Count Five of the First Amended Complaint that Defendant School District of Philadelphia is vicariously liable for Defendant Roulhac's actions as described above and, by employing Defendant Roulhac as an assistant principal at Frankford, Defendant School District of Philadelphia knew, or should have known, that Defendant Roulhac may use force to fully perform his duties and responsibilities. (Am. Compl. ¶¶ 106–07.)

Defendant School District of Philadelphia argues that Plaintiff's state law claim of vicarious liability against the School District is barred by the Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. Cons. Stat. § 8541 et seq. The Tort Claims Act states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. § 8541. For purposes of the Tort Claims Act, the School District of Philadelphia is a "local agency" and is entitled to immunity unless one of the statutory exceptions in § 8542 applies. See, e.g., Wells v. Harrisburg

14

Area Sch. Dist., 884 A.2d 946, 948 (Pa. Commw. Ct. 2005) (noting that "local government agencies, such as school districts, are generally immune from tort liability under the Act commonly referred to as the Political Subdivision Tort Claims Act."). "Section 8542 provides that an injured party may recover in tort from a local governmental agency if: (1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories." Id. (citing Cureton v. Phila. Sch. Dist., 798 A.2d 279, 283 (Pa. Commw. Ct. 2002) (citing 42 Pa. Cons. Stat. § 8542), appeal denied, 820 A.2d 704 (Pa. 2003)). The eight enumerated categories are: 1) operation of motor vehicles; 2) care, custody or control of personal property; 3) care, custody or control of real property; 4) trees, traffic controls and street lighting; 5) utility service facilities; 6) streets; 7) sidewalks; and 8) care, custody or control of animals. See 42 Pa. Cons. Stat. § 8542. According to Defendant, therefore, the Tort Claims Act bars Plaintiff's vicarious liability claim against the School District of Philadelphia because the claim does not fall within one of the eight enumerated categories.

Plaintiff responds by arguing that the Tort Claims Act does not bar his claim against the School District of Philadelphia because Pennsylvania law allows an employer to be vicariously liable for the negligent acts—and in certain circumstances intentional or criminal acts—of an employee which cause injuries to a third party if those acts were committed during the course of and within the scope of employment. (Pl.'s Resp. Opp'n Defs. School District of Philadelphia, Hite, and Fisher's Mem. Supp. Mot. Dismiss 17 (citing Vicky M. v. Ne. Educ. Intermediate Unit 19, 486 F. Supp. 2d 437, 461–62 (M.D. Pa. 2007), on reconsideration, No. Civ.A.06-1898, 2007 WL 2844428 (M.D. Pa. Sept. 26, 2007)).) Plaintiff's reliance on Vicky M. is curious because, in

15

that case, the court found that the defendant school district was immune from the plaintiff's state law claims because "[n]one of these [enumerated] exceptions apply to this case. Therefore, the general grant of immunity in section 8541 controls and insulates the [school district] from liability for Plaintiffs' tort claims."[6] Id. at 460. Nonetheless, Plaintiff goes on to argue that Defendant Roulhac's conduct was within the scope of his employment and thus satisfied the standard as outlined in Vicky M: "(1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer."[7] Id. at 461–62 (citing R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 699 (Pa. Super. Ct. 2000). In Vicky M., the court found that the defendant's supervisory employers could not be vicariously liable because "[p]laintiffs have alleged actions . . . which would constitute violations of the Pennsylvania School Code, and can in no fashion be said to have been undertaken, even in part, to serve [the plaintiff's] employers . . . [and the] alleged abusive acts, therefore, should be considered outside the scope of [the plaintiff's] employment, since they were performed in an outrageous manner and were not actuated by an intent to perform the business of her employer . . . ." Id. at 462. Defendant Roulhac's alleged conduct can be described in a similar fashion, and therefore Plaintiff's argument is not persuasive.

---

[6] Plaintiff's breach of fiduciary duty claim, discussed below, is also barred as against Defendant School District of Philadelphia. See Gjeka v. Delaware Cnty. Coll., No. Civ.A.12-4548, 2013 WL 2257727, at *12 (E.D. Pa. May 23, 2013).

[7] Even if, as Plaintiff argues, Frankford employees such as Defendant Roulhac were trained by Defendant School District of Philadelphia to potentially use physical force to diffuse violent outbreaks, Defendant School District of Philadelphia cannot be said to have "expected" that Defendant Roulhac would use violent physical force against a student under the circumstances alleged in the Amended Complaint.

16

Defendant School District of Philadelphia is correct that the Tort Claims Act bars Plaintiff's vicarious liability claim, and Plaintiff's arguments to the contrary are unavailing. Accordingly, Count Five of the Amended Complaint must be dismissed with prejudice.

## C. **Breach of Fiduciary Duty**

In Count Six, Plaintiff alleges that Defendants Hite, Fisher, and School District of Philadelphia breached the fiduciary relationship they created between themselves and Plaintiff by allowing Defendant Roulhac to abuse Plaintiff physically, emotionally, and psychologically. (Am. Compl. ¶¶ 102, 104.)[8] Plaintiff further alleges that Defendants were on notice of Defendant Roulhac's prior misconduct as an administrator in the Philadelphia School District based on the contents of his personnel file, and that as a result of that notice, Defendants Hite, Fisher, and School District of Philadelphia had an increased duty to supervise, control, and/or monitor Defendant Roulhac's conduct, which they failed to do. (Id. ¶¶ 106–107.)

Defendants School District of Philadelphia, Hite, and Fisher argue that Plaintiff's claim for breach of fiduciary duty must be dismissed because it is also barred by the Tort Claims Act and does not fall within the eight enumerated exceptions discussed above.[9] For the same reasons

---

[8] The numbered paragraphs in Counts Five and Six of the Amended Complaint both include the range of 102–109. The Court's reference to those numbered paragraphs which are duplicative should be read as referring to those numbered paragraphs within the relevant Count of the Amended Complaint.

[9] Defendants also argue that Plaintiff did not allege that Hite and Fisher were present or personally involved in the incident on November 2, 2012. Plaintiff responds by arguing that Defendants had been on notice of prior misconduct by Defendant Roulhac and, thus, had an increased duty to supervise, control and monitor his conduct. However, the conduct for which Defendant Roulhac had been demoted was an inability to manage an elementary school, not assaulting students, and, thus, Defendants Hite and Fisher would not have been on notice that they had an increased duty to supervise Defendant Roulhac to prevent him from assaulting students. In any event, the Tort Claims Act bars this claim.

discussed previously, the breach of fiduciary duty claim as against Defendant School District of Philadelphia is barred by the Tort Claims Act.

Defendants argue further that, to the extent the breach of fiduciary duty claim is based on negligent hiring, supervision, or retention of Defendant Roulhac, that claim is also barred by the Tort Claims Act. (Defs. School District of Philadelphia, Hite, and Fisher's Mem. Supp. Mot. Dismiss 40–41.) In support of their argument Defendants rely on numerous cases finding that negligent hiring, supervision, or retention claims are barred by, and do not fall within the enumerated exceptions to, governmental immunity in the Tort Claims Act. See, e.g., Gjeka v. Delaware Cnty. Cmty. Coll., No. Civ.A.12-4548, 2013 WL 2257727, at *12 (E.D. Pa. May 23, 2013) (finding that the plaintiff's claim for "negligent and careless hiring, retention, or lack of supervision" must be dismissed because it was barred by the Tort Claims Act); Joyner v. Sch. Dist. of Phila., 313 F. Supp. 2d 495, 504 (E.D. Pa. 2004) (dismissing plaintiff's claim because "[n]egligent hiring, training and retention of an unfit supervisor is not one of the negligent acts for which immunity is waived" under the Tort Claims Act).

Plaintiff responds by arguing that the Tort Claims Act does not bar his state law claims against Defendants Hite and Fisher because "the Act provides that when an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and the employee meets certain statutory requirements, then the local agency will indemnify the employee for the payment of any judgment on the suit." (Pl.'s Resp. Opp'n to Defs. School District of Philadelphia, Hite, and Fisher's Mot. Dismiss 15 (citing 42 Pa. Cons. Stat. § 8548(a)).)

Section 8548(a) provides that

> When an action is brought against an employee of a local agency
> for damages on account of an injury to a person or property, and he
> has given timely prior written notice to the local agency, and it is

18

> judicially determined that <u>an act of the employee caused the injury</u>
> <u>and such act was, or that the employee in good faith reasonably</u>
> <u>believed that such act was, within the scope of his office or duties,</u>
> the local agency shall indemnify the employee for the payment of
> any judgment on the suit.

42 Pa. Cons. Stat. § 8548 (emphasis added). As discussed above, Defendant Roulhac's alleged

intentional assault against Plaintiff was not within the scope of his office or duties, nor has

Plaintiff alleged that Defendant Roulhac reasonably believed in good faith that it was within the

scope of his office or duties to use physical force against Plaintiff in the manner alleged.

Accordingly, the indemnification provision would not apply under these circumstances even if

the Tort Claims Act did not bar the claim.

Because Plaintiff's claim that Defendants Hite, Fisher, and School District of

Philadelphia breached a fiduciary relationship is barred by the Tort Claims Act, Count Six must

be dismissed with prejudice.

## D. Injury to Human Dignity

Plaintiff alleges in Count Seven that Defendants Roulhac, Hite, and Fisher violated

Plaintiff's substantive and procedural right to a liberty interest in his dignity as a human being

under the United States Constitution. (Am. Compl. ¶ 113.) Plaintiff alleges that "[i]t was not

objectively reasonable for these Defendants to ignore Plaintiff's serious and traumatic head

injury and allow the Plaintiff to engage in full-time academic activity without modification when

it was clearly a threat to his health and well-being," and that "these Defendants' actions

demonstrated an adopted practice, custom or policy to deliberate indifference to Plaintiff's

overall health, safety and welfare." (Id. ¶¶ 114–15.) Plaintiff further alleges, upon information

and belief, that "Defendants, through either express policy or the inactions of their policy

19

makers, had a policy and/or practice of reckless indifference to the rights, health and safety of student athletes including, but not limited to, the Plaintiff." (Id. ¶ 119.)

### 1. Defendant Roulhac

Defendant Roulhac argues that the Fourteenth Amendment to the United States Constitution does not create a constitutional right to a free and appropriate education, and that to the extent Plaintiff seeks to assert his claim in Count Seven directly under the Fourteenth Amendment, it must be dismissed.[10] (Def. Roulhac's Mem. Supp. Mot. Dismiss 8.)

Plaintiff alleges that he was allowed "to engage in full-time academic activity without modification," which appears to be an education-based claim. "[T]he Supreme Court has held that there is no fundamental right to public education." Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 (3d Cir. 2007), amended on reh'g (Mar. 8, 2007) (citing San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 35 (1973)). Thus, Plaintiff cannot pursue a § 1983 claim on those grounds as he has not alleged the deprivation of a right secured by the Constitution. See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.") (internal citations and quotations omitted); D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1367 (3d Cir. 1992) ("Generally, the first issue in a

---

[10] Defendant Roulhac made this argument most clearly with respect to Count Fifteen, and as Defendant Roulhac has also argued that Count Seven is duplicative of Count Fifteen, the Court cites to his argument urging dismissal of Count Fifteen.

Defendant Roulhac also argues that there is no remedy under § 1983 for violations of the IDEA and Section 504 of the Rehabilitation Act. (Def. Roulhac's Mem. Supp. Mot. Dismiss 9, 11.) The Third Circuit has held that § 1983 is not an available means of remedying violations of the IDEA or Section 504 of the Rehabilitation Act. See A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 803, 805–06 (3d Cir. 2007) (finding that "Congress did not intend § 1983 to be available to remedy violations of the IDEA" and concluding that § 1983 is not available for alleged violations of rights under Section 504 because "[t]here is no showing that the remedial scheme in Section 504 was intended "to complement, rather than supplant, § 1983.") (citing City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 122 (2005)).

20

§ 1983 case is whether a plaintiff sufficiently alleges a deprivation of any right secured by the constitution.") (citing Baker v. McCollan, 443 U.S. 137, 140 (1979)).

That issue aside, the Court will assume that Plaintiff is attempting to allege a constitutional claim distinct from any withdrawn claims concerning his statutory right to an education. Plaintiff has captioned Count Seven "Violations of the United States of America's Constitution Under Amendment Fourteen—Due Process Clause For Injury to Human Dignity Enforceable Via 42 U.S.C. § 1983." It is not clear, however, on the basis of the factual allegations in the Amended Complaint and the specific allegations in Count Seven, in what way that claim is distinct from the education-based claims Plaintiff voluntarily withdrew. In response to Defendant Roulhac's Motion to Dismiss, Plaintiff derides Defendant Roulhac's Memorandum of Law in support of his Motion to Dismiss as "not so much an argument but a brief regurgitation of Plaintiff's allegations" and argues that Count Seven "implicate[s] only Plaintiff's procedural and due process rights under the Due Process Clause of the Fourteenth Amendment for which there is a remedy available under Section 1983" and that he has set forth a prima facie claim under § 1983.[11] (Pl.'s Resp. Opp'n Def. Roulhac's Mot. Dismiss 12.)

Assuming that by "procedural and due process rights" Plaintiff refers to his substantive due process rights, the Court must consider whether Defendant Roulhac's conduct "shocks the conscience," under which "only the most egregious executive action can be said to be 'arbitrary' in the constitutional sense." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998), abrogated

---

[11] Plaintiff appears to base this assertion on a pre-Twombly Third Circuit case, and states that this Court may only dismiss a complaint "if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." (Id. (citing Swin Res. Sys., Inc. v. Lycoming Cnty. Pa., 883 F.2d 245, 247 (3d Cir. 1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)) (citing Conley v. Gibson, 355 U.S. 41, 78 (1957)) abrogated by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).) Plaintiff's argument is simply incorrect, since that standard was overruled and replaced with the current Twombly/Iqbal standard discussed above.

21

on other grounds by Saucier v. Katz, 533 U.S. 194 (2001).  As Plaintiff does not specify in the Amended Complaint in what way, if any, Defendant Roulhac was involved in allowing Plaintiff "to engage in full-time academic activity without modification when it was clearly a threat to his health and well-being" after Plaintiff returned to school, the Court is unable to evaluate whether Plaintiff has pled a legally sufficient claim for violation of his human dignity pursuant to § 1983. Accordingly, Count Seven must be dismissed without prejudice as to Defendant Roulhac. Plaintiff will be permitted to re-plead Count Seven as against Defendant Roulhac if he can set forth adequate factual allegations to support that claim.

### 2.  **Defendants Hite and Fisher**

Defendants Hite and Fisher argue that Plaintiff cannot bring a § 1983 substantive due process claim against them in their individual capacities under a respondeat superior theory of liability.  (Defs.' School Dist. of Phila., Hite, and Fisher's Mem. Supp. Mot. Dismiss 23.) Specifically, Defendants Hite and Fisher argue that Plaintiff has not alleged that those Defendants had any personal involvement or acquiescence in their subordinate's failure to provide Plaintiff with a free and appropriate public education.  (Id. at 23–24 (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").)  Plaintiff responds by arguing that "development" of his allegations that "Defendants Hite and Fisher had knowledge of Defendant Roulhac's prior misconduct and, despite such knowledge, failed to supervise Defendant Roulhac . . . will happen during discovery."  (Pl.'s Resp. Opp'n Defs. School Dist. of Phila., Hite, and Fisher's Mot. Dismiss 15.) Plaintiff does not respond specifically to Defendants' arguments with respect to his human

dignity claim and the allegation that Plaintiff was allowed "to engage in full-time academic activity without modification."

The United States Supreme Court has clearly stated that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 71 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 676 (internal citations omitted)). Thus, "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. "The Iqbal Court ultimately observed that '[i]n a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer.'" Id. (quoting Iqbal, 556 U.S. at 677).

Plaintiff has not made any allegations that Defendants Hite or Fisher had any personal involvement in Defendant Roulhac's, or other Frankford employees', alleged conduct towards Plaintiff. Instead, Plaintiff alleges supervisory liability, which cannot form the basis of a valid claim against Defendants Hite and Fisher. Similarly, Plaintiff has not alleged specifically that Defendant Hite or Defendant Fisher were personally involved in allowing Plaintiff "to engage in full-time academic activity without modification," alleging only that "all parties involved" attended a meeting to develop a 504 plan and that the School District failed to provide him with teachers trained in working with students with brain injuries. The phrase "all parties involved" is not specific enough to demonstrate that Defendant Hite or Defendant Fisher were individually involved in a failure to provide Plaintiff with modifications for his full-time academic activity.

Plaintiff argues that he will "develop" allegations during discovery, but Plaintiff misunderstands the pleading burden—at this stage of litigation, a complaint must already contain

factual allegations that provide notice to the defendant, allege facts suggestive of the prohibited conduct, and "raise a right to relief above a speculative level." See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 555)). In the absence of any factual allegations that Defendant Hite or Defendant Fisher had any personal involvement or acquiescence in Defendant Roulhac's or other Frankford employees' treatment of Plaintiff, or in the alleged failure to prevent Plaintiff from engaging in full-time academic activity without modification, this claim must be dismissed as against Defendants Hite and Fisher. Plaintiff will be permitted to re-plead Count Seven as against Defendants Hite and Fisher if he can set forth sufficiently pled factual allegations to support that claim.[12]

### 3. Defendant School District of Philadelphia

In Count Eleven of the Amended Complaint, Plaintiff alleges that actions of Defendant School District of Philadelphia violated Plaintiff's substantive and procedural due process right to a liberty interest in his dignity as a human being. (Am. Compl. ¶ 156.) Plaintiff alleges further that Defendant School District of Philadelphia, acting under color of state law, (1) had knowledge of Defendant Roulhac's previous misconduct as outlined in his personnel file and which resulted in his demotion and decision to resign, and (2) that despite such knowledge, Defendant School District of Philadelphia did not take any affirmative action in response to that misconduct other than the demotion, and later permitted Defendant Roulhac to rescind his resignation and return to the District without any affirmative action or plan to monitor, remediate, and or supervise Defendant Roulhac. (Id. ¶¶ 157–60.) Plaintiff alleges that Defendant School District of Philadelphia's deliberate indifference and inaction in response to

---

[12] Defendants Hite and Fisher have argued that they are entitled to qualified immunity and that Count Seven should be dismissed with prejudice. (See Defs. School Dist. of Phila., Hite, and Fisher's Reply 6–7.) If Plaintiff chooses to re-plead Count Seven, the Court will address the issue of qualified immunity at that time.

24

that knowledge permitted an environment that enabled Defendant Roulhac to make physical contact with Plaintiff on November 2, 2012, causing him severe and grievous injuries, and which demonstrated an adopted practice, custom or policy of deliberate indifference to Plaintiff's overall health, safety and welfare. (Id. ¶¶ 161–63.)

The Supreme Court has "recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997). Rather, the Court "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury." Id. (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 689 (1978); Pembaur v. Cincinnati, 475 U.S. 469, 480–81 (1986); Canton v. Harris, 489 U.S. 378, 389 (1989)). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Brown, 520 U.S. at 404. "[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff." Id. at 412 (emphasis in original). "The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong" and the subsequent constitutional violation must be "a plainly obvious consequence of the hiring decision." Id.

Defendant School District of Philadelphia argues that Plaintiff has not set forth a plausible claim for municipal liability because (1) Plaintiff's allegations do not meet the "strict nexus and causation requirements" that the United States Supreme Court established in Brown, and (2) Defendant Roulhac was demoted for inaction and his inability to manage an elementary school, not for assaulting students. (Defs.' Mem. Supp. Mot. Dismiss 15–16.) Defendant argues that "[Plaintiff's] allegations regarding Defendant's failure to perform his duties at a completely different school, more than three years before the events in question, do not make it 'plainly obvious' that he would assault a student and inflict the 'particular injury' allegedly suffered by [Plaintiff]." (Id. at 15 (citing Brown, 520 U.S. at 411).)

Plaintiff responds by arguing that the "direct knowledge and deliberate actions taken by the District, as alleged, is exactly what is required by the very decisional law cited by Defendants" because "it was the District that processed Roulhac, sanctioned him and then placed him at Frankford High School." (Pl.'s Resp. Opp'n Defs. School District of Philadelphia, Hite, and Fisher's Mot. Dismiss 12.) Plaintiff asserts that although the District knew of the "numerous incidents regarding violence and violent behavior including fighting before and after school in the schoolyard, school bathrooms, and stairwells" during Defendant Roulhac's time at Frederick Douglass Elementary School, it "decided to create the volatile cocktail of placing Roulhac at Frankford High School" even though Frankford had been identified by the Pennsylvania Board of Education as a "Persistently Dangerous School." (Id. at 12–13.)

In response, Defendant School District of Philadelphia asserts that Plaintiff has not alleged that Defendant Roulhac, "from 2002 through November 2, 2012, ever assaulted or had any physical altercations with a student." (Defs. Sch. Dist. of Phila., Hite, and Fisher's Reply 5.) Defendant argues that "Plaintiff cannot show that Defendant Roulhac's background made his

alleged physical assault of Plaintiff 'a plainly obvious consequence of the hiring decision'"
because "[e]ven if the School District knew 'that Defendant Roulhac was ill-equipped at
handling, controlling, and managing violence in an academic climate,' (Pl.'s Resp. Opp'n Mot.
Dismiss 13), this case is clearly about actual infliction of violence upon a student, not about the
management of the school environment." (Id. at 6 (quoting Brown, 530 U.S. at 412).)

Plaintiff has not alleged a sufficient connection between Defendant Roulhac's
background and the alleged violations of Plaintiff's constitutional rights. Defendant Roulhac's
past inability to manage the environment of an elementary school does not make it plainly
obvious that he would inflict the particular injuries Plaintiff suffered and, accordingly, the
municipal liability standards as set forth by the Supreme Court have not been met. Defendant
School District of Philadelphia's Motion to Dismiss Count Eleven is therefore granted, and
Count Eleven will be dismissed without prejudice.[13]

## E. Injury to Bodily Integrity

Plaintiff asserts both federal and state claims containing allegations of injury to his bodily
integrity. The Court will address Plaintiff's § 1983 claims in Counts Eight and Twelve
separately from Plaintiff's claim under the Pennsylvania Constitution in Count Ten.

### 1. Violations of 42 U.S.C. § 1983

#### a.     Defendants Roulhac, Hite, and Fisher

Plaintiff alleges in Count Eight that Defendants Roulhac, Hite, and Fisher violated his
substantive and procedural due process right to a liberty interest in his bodily integrity because it

---

[13] As pled in the Amended Complaint, Count Eleven is insufficient to withstand a motion to
dismiss pursuant to Rule 12(b)(6). However, in light of Plaintiff's arguments in his Sur-Reply,
which are based on documents Plaintiff obtained after filing his January 8, 2015 Motion to
Compel Compliance with a third-party subpoena, Plaintiff will be permitted to re-plead Count
Eleven in a Second Amended Complaint filed in accordance with the Order accompanying this
Opinion.

was not objectively reasonable for those Defendants "to ignore Plaintiff's serious and traumatic brain injuries and allow the Plaintiff to engage in full-time academic activity without modification that caused further injury and effects." (Am. Compl. ¶¶ 125–26.) Plaintiff alleges further that Defendants' actions demonstrated an adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety and welfare, and that Defendants acted in their capacities as employees of Defendant Philadelphia School District and thus acted under color of state law in violation of 42 U.S.C. § 1983. (Id. ¶¶ 127, 129.) He goes on to assert, upon information and belief, that Defendants, through either express policy or the inactions of their policy makers, had a policy and/or practice of reckless indifference to the rights, health and safety of student athletes including Plaintiff. (Id. ¶ 131.)

Defendants make the same arguments in favor of dismissing Count Eight as they did for dismissing Count Seven,[14] and Plaintiff makes the same argument in favor of denying Defendants' Motions to Dismiss Count Eight. For the same reasons as described above with respect to Count Seven, Count Eight is being dismissed without prejudice. Plaintiff may re-plead Count Eight if he is able to make specific allegations as to how Defendants Roulhac, Hite, and Fisher were personally involved in any failure to prevent Plaintiff from engaging in full-time academic activity without modification.

**b.    Defendant School District of Philadelphia**

In Count Twelve of the Amended Complaint, Plaintiff alleges that Defendant School District of Philadelphia, acting under color of state law, violated his substantive and procedural due process right to a liberty interest in his bodily integrity through actions and inactions which

---

[14] Defendants Hite and Fisher have argued that they are entitled to qualified immunity and that Count Eight should be dismissed with prejudice. (See Defs. School Dist. of Phila., Hite, and Fisher's Reply 6–7.) If Plaintiff chooses to re-plead Count Eight, the Court will address the issue of qualified immunity at that time.

28

are subject to enforcement via 42 U.S.C. § 1983. (Am. Compl. ¶¶ 167–68.) He explains further that (1) Defendant School District of Philadelphia had knowledge of Defendant Roulhac's previous misconduct as outlined in his personnel file and which resulted in his demotion and decision to resign, and (2) that despite such knowledge, Defendant School District of Philadelphia purportedly did not take any affirmative action in response to that misconduct other than the demotion, and later permitted Defendant Roulhac to rescind his resignation and return to the District without any affirmative action or plan to monitor, remediate and or supervise him. (Id. ¶¶ 169–71.) Plaintiff avers that Defendant School District of Philadelphia's deliberate indifference and inaction in response to that knowledge permitted an environment that enabled Defendant Roulhac to make physical contact with Plaintiff on November 2, 2012, causing him severe and grievous injuries, and which demonstrated an adopted practice, custom or policy of deliberate indifference to Plaintiff's overall health, safety and welfare. (Id. ¶¶ 172–74.)

Defendant now contends that Plaintiff failed to set forth a plausible claim against the School District under § 1983 because there are no allegations that Defendant Roulhac, from 2002 until November 2, 2012, ever assaulted or had any physical altercation with a student prior to the incident with Plaintiff. (Defs. School Dist. of Phila., Hite, and Fisher's Mem. Supp. Mot. Dismiss 14.) Defendant argues further that Plaintiff's allegations do not satisfy "the strict nexus and causation requirements" for municipal liability under § 1983 because Defendant's demotion resulted from "Defendant's failure to perform his duties at a completely different school, more than three years before the events in question, [which] do[es] not make it 'plainly obvious' that he would assault a student and inflict the 'particular injury' allegedly suffered by [Plaintiff]." (Id. at 15–16.)

As discussed above, "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 689 (1978)). Municipalities or other local government entities are not liable under § 1983 through respondeat superior. Id. ("We have consistently refused to hold municipalities liable under a theory of respondeat superior."). Rather, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Id. (citing Monell, 436 U.S. at 694). A plaintiff bringing a § 1983 claim against a municipality "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404 (emphasis in original). In other words, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. "[D]eliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction." S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 263 (3d Cir. 2013) (internal citations and quotations omitted). It also requires a showing of "actual knowledge; allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." Id. at 266 (citing Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (holding that, under the deliberate indifference standard, "[i]t is not sufficient that the official should have known of the risk")).

Here, Plaintiff alleges that the School District had knowledge of Defendant's previous misconduct as outlined in his personnel file, yet failed to take affirmative action aside from demoting Defendant. According to Plaintiff, that "deliberate indifference and inaction in response to said knowledge permitted the environment which enabled Defendant Roulhac to

30

make physical contact with Plaintiff on November 2, 2012," whose injuries were "a direct and proximate result of the Defendant's unconstitutional acts described above." (Am. Compl. ¶¶ 161, 163.) In accordance with municipal liability jurisprudence, however, merely placing Defendant Roulhac in a different school with a demotion in title following his failure to adequately manage a school as a principal is not by itself enough to satisfy municipal liability standards under § 1983. See Brown, 520 U.S. at 405 (reasoning that a claim that "a single facially lawful hiring decision can launch a series of events that ultimately cause a violation of federal rights" is not enough to satisfy § 1983 and courts must apply "rigorous standards of culpability and causation . . . to ensure that the municipality is not held liable solely for the actions of its employee."). "To prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Id. at 410. More specifically,

> a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

Id. at 412. Defendant Roulhac was demoted for his inability to run a school, not for physical violence against a student. Plaintiff's allegations against the School District, therefore, do not "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. at 404; see also M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., No. 13-Civ.A.-2718, 2014 WL 4273300, at *11 (M.D. Pa. Aug. 29, 2014) ("Courts that have addressed Brown have consistently interpreted it to mean that municipal liability for negligent hiring based on a

single hiring decision requires the threat identified in an applicant's background to be basically identical to the harm eventually caused by the applicant.") (internal citations omitted).

Plaintiff argues that the allegations in the Amended Complaint contain "exactly what is required by the very decisional law cited by Defendants[15] in their memorandum of law," because Defendant Roulhac was removed from a school based on his inability to manage violence among students and subsequently placed in a school that had been identified by the Pennsylvania Board of Education as a "Persistently Dangerous School." (See Pl.'s Resp. Opp'n Defs. School Dist. of Phila., Hite and Fisher's Mot. Dismiss 12–13.) As discussed above, however, Defendant Roulhac's inability to manage violence in an elementary school is not sufficiently linked to the assault he is alleged to have committed against Plaintiff such that the School District can be found liable for a deprivation of Plaintiff's constitutional rights. Plaintiff asserts that Defendants "avoid addressing the entirety of the pleadings and the facts contained therein" and instead "deliberately and myopically focus[] the Court only on the incident between Defendant Roulhac and Plaintiff and ignore Defendant Roulhac's past misconduct." (Id. at 14.) Contrary to Plaintiff's argument, however, Defendant Philadelphia School District does not ignore Defendant Roulhac's past misconduct in their argument—in fact it relies on the facts surrounding his demotion to demonstrate the insufficient connection between his demotion and the incident with Plaintiff for purposes of municipal liability. Defendant School District correctly points out that

---

[15] Bizarrely, Plaintiff argues that Defendant's reliance on Monell and Brown, as well as other municipal liability cases, "are tacit admissions that Plaintiff has set forth a viable claim for the violation of his substantive due process rights under the Fourteenth Amendment," because those cases were decided on summary judgment. (See Pl.'s Resp. Opp'n Defs. School Dist. of Phila., Hite and Fisher's Mot. Dismiss 13 n.5, 14.) The absence of a closed evidentiary record containing evidence submitted by both Plaintiff and Defendants in this case, which has proceeded through some level of discovery and depositions, does not render United States Supreme Court jurisprudence inapplicable to a determination of the legal sufficiency of Plaintiff's allegations, all of which must be taken as true at the motion to dismiss phase. Plaintiff's argument is therefore unavailing.

"[e]ven if the School District knew 'that Defendant Roulhac was ill-equipped at handling, controlling, and managing violence in an academic climate,' this case is clearly about actual infliction of violence upon a student, not about the management of the school environment." (Defs. School Dist. of Phila., Hite, and Fisher's Reply 6 (quoting Pl.'s Resp. Opp'n Defs. School Dist. of Phila., Hite and Fisher's Mot. Dismiss 13).) Plaintiff simply has not satisfied the legal standard for a municipal liability claim pursuant to § 1983. Accordingly, Defendant School District's Motion to Dismiss Count Twelve of the Amended Complaint must be granted, and that claim is dismissed without prejudice.[16]

## 2. Violations of Article I, Section I of the Constitution of the Commonwealth of Pennsylvania as Against Defendants Roulhac, Hite, and Fisher

In Count Ten, Plaintiff alleges that he was deprived of his right to bodily integrity pursuant to Article I, Section I of the Constitution of the Commonwealth of Pennsylvania, which states that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." (Am. Compl. ¶ 149 (quoting Pa. Const., art. 1, § 1).) Plaintiff alleges that Defendants Roulhac, Hite, and Fisher's actions and/or inactions constituted an adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety, and welfare. (Id. ¶ 150.)

Defendant Roulhac argues that Pennsylvania's Constitution does not provide a private right of action, relying on a Third Circuit Court of Appeals case stating that "[n]o Pennsylvania

---

[16] As pled in the Amended Complaint, Count Twelve is insufficient to withstand a motion to dismiss pursuant to Rule 12(b)(6). However, in light of Plaintiff's arguments in his Sur-Reply, which are based on documents Plaintiff obtained after a January 8, 2015 Motion to Compel compliance with a third-party subpoena, Plaintiff will be permitted to re-plead Count Twelve in a Second Amended Complaint filed in accordance with the Order accompanying this Opinion.

statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." See Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) (citing Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")). Defendants Hite and Fisher set forth the same argument.

Plaintiff responds by arguing that the Pennsylvania Constitution does provide a private right of action, relying on cases stating that the requirements of Article I, Section I of the Pennsylvania Constitution are not distinguishable from the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and that courts must apply the same analysis to both claims. (Pl.'s Resp. Opp'n Def. Roulhac's Mot. Dismiss 11 (citing Burger v. Bd. Of Sch. Dirs., 839 A.2d 1055, 1062 n.12 (Pa. 2003); Pa. Game Comm'n v. Marich, 666 A.2d 253, 255 n.6 (Pa. 1995)).)[17] Those cases, however, merely compared the appropriate analysis of whether the requirements of due process were met under the Pennsylvania Constitution with that used in evaluating a Fourteenth Amendment claim—they did not state that any remedy available under the Fourteenth Amendment is therefore also available under Article I, Section I of the Pennsylvania Constitution. As both Pennsylvania and Third Circuit case law clearly state that there is no private right of action for monetary damages under Article I, Section I of the Pennsylvania Constitution, this claim must be dismissed with prejudice.

---

[17] The pages of Plaintiff's Response in Opposition to Defendant Roulhac's Motion to Dismiss are not numbered but the Court has numbered them in accordance with the page numbers in the document's ECF heading.

**F. Injury as a Result of a State-Created Danger/Special Relationship**

### 1. Defendants Roulhac, Hite, and Fisher

Plaintiff stated in both of his Responses in Opposition that he was voluntarily withdrawing Count Nine, captioned as "Violations of the United States of America's Constitution Under Amendment Fourteen Due Process Clause for Injury as a Result of a State Created Danger/Special Relationship Enforceable Via 42 U.S.C. § 1983." The allegations in Count Nine are substantially the same as those contained in Count Thirteen, discussed below, which is being dismissed for failure to state a claim for which relief can be granted. Defendant Roulhac notes in his Reply that "[w]hile Plaintiff lists Count IX as one of the education-based counts that he is voluntarily withdrawing at the outset of his Opposition, he later includes Count IX along with Counts VII and VIII in his argument that it should not be dismissed." (Def. Roulhac's Reply 1 n.1.) Plaintiff's argument as to why Counts Seven, Eight, and Nine should not be dismissed consists of one paragraph which relies on an incorrect pleading standard[18] and states that those counts "implicate only Plaintiff's procedural and due process rights under the Due Process Clause of the Fourteenth Amendment for which there is a remedy available under Section 1983." (Pl.'s Resp. Opp'n Def. Roulhac's Mot. Dismiss 12.) Assuming that Plaintiff is not voluntarily withdrawing Count Nine, in spite of his contrary declaration, the Court will dismiss Count Nine with prejudice for the same reasons discussed below with respect to Count Thirteen.

### 2. Defendant School District of Philadelphia

Plaintiff alleges in Count Thirteen that Defendant School District of Philadelphia violated Plaintiff's substantive and procedural due process right "to be free from State occasioned and/or

---

[18] See supra note 11.

created harm to his bodily integrity and human dignity" and that "[s]uch action and/or inaction exhibited by this Defendant would shock the conscience of a reasonable person under like circumstances." (Am. Compl. ¶¶ 178–79.) Plaintiff alleges further that by way of those actions/inactions, Defendant School District of Philadelphia "utilized its position of authority and power to create a danger to the Plaintiff, and/or placed Plaintiff in a more vulnerable manner to the known risk of harm," when "Plaintiff was an obvious member of a class subjected to the harm brought about by the State's actions and/or inactions." (Id. ¶¶ 180–81.) Plaintiff alleges that Defendant School District of Philadelphia's actions and/or inactions "demonstrated an adopted practice, custom or policy of deliberate indifference to Plaintiff's overall health, safety and welfare" which "is demonstrated by the fact that Plaintiff sustained an obvious traumatic head injury but was forced back onto the field of play and was placed in a position of danger by State occasioned or created harm." (Id. ¶¶ 182–83.)

It is not entirely clear from these allegations what the basis is for Count Thirteen. From the allegations in Paragraphs 182 and 183, the Court will assume that Plaintiff refers to the treatment he received after returning to school and which Plaintiff referred to in other counts as allowing Plaintiff to engage in full-time academic activity without modification.

Generally, "[t]he [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). In the Third Circuit, there are two exceptions to DeShaney. The first, the "special relationship" exception, does not apply between a public

school and a student. See, e.g., Morrow v. Balaski, 719 F.3d 160, 171 (3d Cir. 2013). The

second is the "state-created danger" exception, which requires a plaintiff to show that

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the
> conscience;
> (3) a relationship between the state and the plaintiff existed such
> that the plaintiff was a foreseeable victim of the defendant's acts,
> or a member of a discrete class of persons subjected to the
> potential harm brought about by the state's actions, as opposed to a
> member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way
> that created a danger to the citizen or that rendered the citizen more
> vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006) (internal citations and

quotations omitted).

Defendant argues that Plaintiff's Amended Complaint does not contain "allegations that

Defendants Fisher and Hite used their authority to render [Plaintiff] more vulnerable to danger

than had they not acted at all." (Defs. School Dist. of Phila., Hite, and Fisher's Mem. Supp. Mot.

Dismiss 28.) The fourth element of a state-created danger claim requires an affirmative act,

rather than a failure to act. See Morrow v. Balaski, 719 F.3d 160, 179 (3d Cir.), as amended

(June 14, 2013) (stating that "the requirement of an actual affirmative act 'is not intended to turn

on semantics of act and omission. Instead, the requirement serves . . . to distinguish cases where

. . . officials might have done more . . . [from] cases where . . . officials created or increased the

risk itself.'" (quoting id. at 186 (Ambro, J. concurring in part and dissenting in part)), cert.

denied, 134 S. Ct. 824 (2013); see also Bright, 443 F. 3d at 282 (observing that the Third Circuit

has "never found a state-created danger claim to be meritorious without an allegation and

subsequent showing that state authority was affirmatively exercised."). Plaintiff couches his

claim in terms of Defendant's "actions/inactions." To the extent his allegation includes

Defendant's "inaction," it cannot support his claim. To the extent Plaintiff bases his claim on Defendant's "actions," he does not adequately specify what the "action" portion of that allegation is, aside from saying that he "was forced back onto the field of play and was placed in a position of danger." These conclusory allegations are insufficient to support a claim of state-created danger.

Defendant School District argues further that "Plaintiff does not even attempt to explain in his Brief how a Fourteenth Amendment Due Process claim against the School District under the 'state-created danger' or 'special relationship' theories is plausible under the circumstances." (Defs. School Dist. of Phila., Hite, and Fisher's Reply 3.) The Court was likewise unable to locate any argument in Plaintiff's Response in Opposition addressing Defendants' Motion to Dismiss with respect to Count Thirteen. Given Plaintiff's insufficient allegations and failure to make any argument in opposition to Defendant School District's Motion to Dismiss Count Thirteen, that claim is dismissed with prejudice.

## IV. CONCLUSION

In light of the foregoing, Defendants' Motions to Dismiss are granted. Counts Five, Six, Nine, Ten, and Thirteen of Plaintiff's Amended Complaint are dismissed with prejudice, and Counts Seven, Eight, Eleven, and Twelve are dismissed without prejudice.

An appropriate Order follows.

ENTERED

JAN 2 8 2015

CLERK OF COURT

38